UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

UNITED STATES OF AMERICA,

                Plaintiff,

-against-

MIGUEL BENITEZ,

                Defendant.

No. 06 Cr. 1156 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Miguel Benitez's motion (dkt. no. 215) for a reduction in sentence pursuant to Section 404 of the First Step Act of 2018 ("FSA").  For the reasons set out below, the motion is GRANTED.

I.    FACTUAL BACKGROUND

    From 2005 to 2008, Mr. Benitez was a leader of a Yonkers-based drug trafficking organization ("DTO") that dealt both crack and powder cocaine. (Presentence Investigation Report ("PSR") ¶¶ 1-2.) Mr. Benitez supervised at least five other individuals—including two co-defendants—who distributed narcotics for the DTO. (Id. ¶ 54.)  In total, the defendant was responsible for at least 4.5 kilograms of crack cocaine. (Id. ¶ 54.) Furthermore, following his arrest, Mr. Benitez admitted that he possessed a loaded .380 caliber handgun in furtherance of his criminal activity. (Id.)

1

On July 30, 2008, Mr. Benitez pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(A) and five hundred grams or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(B).

On October 31, 2008, Mr. Benitez was sentenced before the Honorable Stephen C. Robinson, United States District Judge. The applicable advisory range under the United States Sentencing Guidelines (the "Guidelines"), based on an offense level of 41 and a Criminal History Category of III was 360 months' to life imprisonment. Judge Robinson sentenced Mr. Benitez to 210 months' imprisonment, which was 150 months lower than the bottom of the Guidelines range.

In his December 16, 2016 letter supporting Mr. Benitez's application for clemency (dkt. no. 215-1), former Judge Robinson explained the reason for the reduction:

> I reduced Mr. Benitez's sentence to 210 months due to the nature and circumstances of the offense and the history and characteristics of his background and to avoid unwarranted sentencing disparities. I noted at the time that "[Mr. Benitez's] history is a relatively unusual one. Both his parents were incarcerated when he was in grade school. Additionally his sister was incarcerated leaving him, at 14, as the sole provider for his two young nephews." Mr. Benitez was thrown into the world of drug dealing. While his situation does not excuse his behavior it provided some context for my decision. I also noted that Mr. Benitez "cared for [his younger siblings] and encouraged them to lead a law-abiding life--which they have." Mr. Benitez struck me as an

2

>      unusual case and one that deserved special consideration by
>      the court.  As I recall he was not involved in any violent
>      behavior.  He was a respectful man who understood and
>      recognized the improper nature of his actions and was sincere
>      in his remorse.  I also believed that he could become a
>      productive member of his community if provided support and
>      the right opportunity."

(See dkt. no. 215-1.)

On January 3, 2019, Mr. Benitez filed a pro se motion for a sentence reduction under the FSA. (Dkt. no. 208.) On March 21, 2019, defense counsel filed a notice of appearance to assist with the pending motion (dkt. no. 210), and on January 3, 2020, filed a letter in support of the motion (dkt. no. 215).

According to the Bureau of Prisons ("BOP"), Mr. Benitez's projected release date is July 27, 2022.

II.  APPLICABLE LAW

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." United States v. Dillon, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). Title 18, United States Code Section 3582(c)(1)(B) provides one such circumstance: "[A] court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." (Emphasis added). Section 404(b) of the FSA provides, in relevant part, that a court may "impose a reduced sentence as if sections

3

2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." This provision satisfies the express permission required under 18 U.S.C. § 3582(c)(1)(B) to modify an already imposed term of imprisonment by making retroactive the portions of the Fair Sentencing Act that lowered statutory penalties for certain offenses involving cocaine base. See, e.g., United States v. Wirsing, 2019 WL 6139017, at *7 (4th Cir. Nov. 20, 2019) ("We hold that § 3582(c)(1)(B) is the appropriate vehicle for a [FSA] motion."); United States v. Williams, No. 00 CR. 1008 (NRB), 2019 WL 5791747, at *5 (S.D.N.Y. Oct. 17, 2019) (construing a FSA motion as brought pursuant to 18 U.S.C. § 3582(c)(1)(B)); United States v. Davis, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (same); United States v. Potts, 2019 WL 1059837, at *2-3 (S. D. Fla. Mar. 6, 2019) ("§ 3582(c) provides the procedural vehicle whereby this Court may modify Defendant's sentence."); United States v. Copple, 2019 WL 486440, at *2 (S.D. Ill. Feb. 7, 2019) ("The Court believes the better vehicle to impose a reduced term of imprisonment [under Section 404 of the FSA] is § 3582(c)(1)(B).").

   III. DISCUSSION

After initially disagreeing, the parties now agree that Mr. Benitez is eligible for a reduction in sentence under the FSA.

Mr. Benitez is approximately 54 years old and has served about thirteen years in custody. As noted above, his current projected release date is some two years from now. He has a minor disciplinary record during incarceration, has earned his GED, and has taken numerous courses aimed at enabling a law-abiding life and acquiring employment skills. Perhaps most importantly, Mr. Benitez also seems to have turned his life around, embracing a positive attitude and lifestyle.

Mr. Benitez also suffers from several conditions that make him particularly susceptible to COVID-19: morbid obesity, hypertension, and breathing issues. (Dkt. no. 222.)

As set forth at length in his papers, Mr. Benitez earned his GED while in custody and completed numerous courses aimed at enabling a law-abiding life, including Freedom from Drugs, Breaking the Cycle, Verbal Advantage, and Parenting. He has also completed courses providing training for employment, including ServSafe Food Handler Training, Culinary Arts, Controlling Food Service Costs, Computer Education, and Internet Explorer.

Mr. Benitez has submitted a letter describing his personal progress. (Dkt. no. 215-3.) He notes that "from the start of this journey, I was under a false belief system. My belief was that everybody was out to get me and I blamed everyone but Miguel for my personal pitfalls." He describes how his health challenges

5

made him "realize[] how precious not only my life was to me, but my children's lives became even more of value."  Thus, he says "I started by separating myself from all foolishness that I was normally associated with."  He adds that "it has been a real battle for me coming from the penitentiary to this point [in a low level institution].  But every experience helped to groom me to become who I am today.  It helped me to become humble, civil, and to live my life accordingly in a settled community setting."  Mr. Benitez is most remorseful.  Finally, he notes that he has a strong family support system in place and children who will benefit from his return.

Mr. Benitez has a post-release plan in place.  He plans to reside in the Tampa, Florida area with his niece.  With his certificates in culinary arts and his work experience as a cook in the Officers Mess dining facility, he plans to become a chef.  Mr. Benitez also has an offer of full-time employment.  (Dkt. no. 215-5.)

Mr. Benitez's crimes were undoubtedly serious and wreaked havoc on people in his community.  A sentence of 13 years, however, is a serious sentence and likely to deter anyone considering similar conduct.  Mr. Benitez's behavior in custody, particularly his good disciplinary record, his earning his GED and numerous certificates, his remorse, and his concern for his family persuade

6

the Court that there is no reason for further incarceration to protect the public from additional crimes by him.

With respect to sentencing disparities, the Court notes former Judge Robinson's acknowledgement at the time of Mr. Benitez's sentencing that the highest sentence received by anyone else involved in the case was eighty months.  Mr. Benitez has served twice that.

The Court also notes Judge Robinson's statement in his 2016 letter (dkt. no. 215-1) that, although he reduced Mr. Benitez's sentence by 150 months, "[i]f the guideline range had been lower and the average variance would have allowed it, I would have sentenced him to an even lower sentence."  The Guidelines range is now lower, and reducing Mr. Benitez's sentence is consistent with the letter and the spirit of the FSA.

In addition, Mr. Benitez's particular susceptibility to COVID-19 constitutes a compelling circumstance warranting release.

IV.  CONCLUSION

For the reasons set out above, Defendant's motion to reduce his sentence (dkt.no. 215) is GRANTED, and he is sentenced to time served plus two weeks.

**SO ORDERED.**

Dated:    New York, New York
          August 10, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge